OPINION
This is an appeal from a judgment of the Court of Common Pleas of Clermont County, Juvenile Division, in which the court permanently terminated the parental rights of appellant, Michelle Jones, mother of Douglas Seal ("Douglas") and Dillon Jones ("Dillon"), and placed Douglas and Dillon in the permanent custody of Clermont County Department of Human Services ("CCDHS").[1] We affirm the trial court's judgment.
The record reveals the following facts pertinent to this appeal. On October 7, 1995, Douglas, born December 4, 1991, and Dillon, born March 28, 1993, were removed from appellant's custody, at which time she was arrested and charged with child endangerment. Appellant spent the next three days incarcerated in the Clermont County jail while the children were placed in foster care. CCDHS then filed a complaint in the Clermont County Court of Common Pleas, Juvenile Division, asserting that the children were dependent children.[2] The complaint alleged that on October 7, 1995, Douglas had been locked out of his apartment for several hours before the police were called. The police discovered appellant inside the apartment with Dillon, intoxicated and passed out. On October 10, 1995, the court granted emergency custody of the children to CCDHS.
On December 22, 1995, appellant was scheduled for sentencing on the child endangerment charge but failed to appear, and a bench warrant was issued for her arrest. On January 2, 1996, CCDHS was granted temporary custody of the children. On March 19, 1996, appellant was found guilty of child endangerment in the Clermont County Municipal Court and placed on probation.
In May of 1996, CCDHS formulated a case plan with objectives for appellant which included: maintaining stable housing and employment, abstaining from the use of alcohol and drugs, completing substance abuse counseling, and completing parenting classes. However, appellant continued to test positive for illegal chemical substances and following her abandonment of permanent housing provided to her through financial assistance from the agency, CCDHS filed a motion for permanent custody of Douglas and Dillon on August 27, 1996.
The trial court held an adjudicatory hearing on the permanent custody motion on January 14, 1997. At the conclusion of that hearing, the magistrate determined, by clear and convincing evidence, that the children could not be placed with either parent within a reasonable period of time, or should not be placed with either parent. The dispositional hearing on the permanent custody motion was held on February 13, 1997 when the issue of the best interest of the children was considered by the magistrate. The magistrate issued his decision on March 3, 1997 recommending that the motion be granted and CCDHS be awarded permanent custody of Douglas and Dillon. Appellant filed her objections to the magistrate's decision on March 17, 1997. The trial court held a hearing on the objections on May 1, 1997. On May 19, 1997, the trial court affirmed the decision of the magistrate over objections, thereby terminating appellant's parental rights. It is from this decision that appellant now appeals setting forth a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MICHELLE JONES IN GRANTING THE MOTION OF CCDHS FOR PERMANENT CUSTODY OF THE CHILDREN.
Appellant's attack of the trial court's determination is twopronged. First, she contends that the finding by the court that the children could not or should not be placed with the parent was against the manifest weight of the evidence and an abuse of discretion. Second, she contends that the trial court's finding that an award of permanent custody to the agency was in the best interest of the children was against the manifest weight of the evidence and an abuse of discretion. For the sake of clarity, we will address both issues raised under the assignment of error as a contention that the trial court's custody determination is against the manifest weight of the evidence.
We begin with the premise that natural parents have a fundamental liberty interest in the care, custody, and management of their children. See Santosky v. Kramer (1982),455 U.S. 745, 769, 102 S. Ct. 1388, 1394, and In re Murray (1990),52 Ohio St.3d 155, 157. However, this interest is not absolute. R.C.2151.353(A)(4) provides that if a child is adjudicated a dependent child, the court may commit the child to the permanent custody of a public children services agency if the court determines (1), in accordance with R.C. 2151.414(E), that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent and (2), in accordance with R.C. 2151.414(D), determines that permanent custody is in the best interest of the child.
"Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer (1982), 455 U.S. 745,769, 102 S. Ct. 1388, 1391, 1392. Furthermore, R.C. 2151.414(E) requires that permanent custody be granted to an agency only when the court's determination is supported by clear and convincing evidence. "Clear and convincing evidence" is that which will provide in the mind of the trier of fact, a firm belief or conviction as to the facts sought to be established. See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368. A trial court's judgment will not be reversed on appeal unless such judgment is unsupported by clear and convincing evidence. Id., paragraph three of the syllabus.
The standard of review on a civil manifest weight of the evidence question has been well established by two Ohio Supreme Court cases, C.E. Morris v. Foley Construction (1978), 54 Ohio St.2d 279, and Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. In its syllabus Morris sets forth the proposition that if a judgment is supported by competent, credible evidence going to all of the essential elements of the case, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. Additionally, the foregoing proposition must be considered in light of Seasons Coal, which requires an appellate court to be "guided by a presumption that the findings of the trier of fact were indeed correct." Seasons Coal at 80.
With these rules in mind, the first thing that the trial court must determine in deciding a motion for permanent custody is whether a child cannot or should not be placed with either of his or her parents within a reasonable period of time. In making this determination, the trial court looks to R.C. 2151.414(E). A trial court may not grant permanent custody to an agency unless it determines by clear and convincing evidence that one or more of the eight statutory factors enumerated in R.C. 2151.414(E) exists.[3] In re William S. (1996), 75 Ohio St.3d 95, syllabus. Once the trial court determines that one or more of the eight statutory factors exists, it must then, as required by R.C.2151.353(A), consider whether permanent custody is in the best interest of the of the child. Id. at 99.
R.C. 2151.414(E) provides, in pertinent part:
 * * * If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents: * * *
 (2) The * * * chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future; * * *
 (4) The parent has demonstrated a lack of commitment toward the child by * * * other actions showing an unwillingness to provide an adequate permanent home for the child;
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child; * * *.
After a thorough review of the record, we find competent credible evidence supporting the trial court's decision that Douglas and Dillon could not or should not be placed with either of their parents within a reasonable period of time. Initially, the record reveals that Douglas and Dillon were removed from appellant as a direct result of her use and abuse of chemical substances. Following the children's removal, appellant was provided a case plan from CCDHS which included abstaining from the use of alcohol and drugs. However, appellant violated this case plan when she tested positive for drug use on three separate occasions: on January 10, 1996, she tested positive for marijuana and cocaine; on April 11, 1996, she tested positive for barbiturates and marijuana; and on November 19, 1996, she again tested positive for marijuana. Finally, when asked to take a drug screen on December 16, 1996, appellant declined and admitted to smoking marijuana.
At the adjudicatory hearing, appellant's probation officer, Kim Gonzales, testified that she was concerned about appellant's only sporadic involvement with Alcoholics Anonymous. Appellant was to attend AA meetings twice a week, but admitted to Gonzales that she had not attended any meetings. Gonzales further testified "I think her sobriety is number one, and everything is going to be based on her ability to get clean and sober and stay that way. Otherwise, I don't think she's going to be able to accomplish anything."
The record also contains competent credible evidence that appellant has been both unable and unwilling to provide an adequate permanent home for Douglas and Dillon. See R.C.2151.414(E)(4). Appellant testified that when Douglas and Dillon were removed from her care, she lost her Aid to Families with Dependent Children (AFDC), and was consequently forced to vacate her apartment. Since that time, she has failed to provide a permanent address to her caseworker. At the time of the adjudicatory hearing, by her own admission, appellant lived "[n]owhere. I just go from here and there, just to friends." From July 1996 until January 1997, appellant admitted to having "lived or stayed" in over ten different places. Furthermore, there is evidence in the record that appellant was unwilling to provide a permanent home for Douglas and Dillon. Theresa Davis, appellant's caseworker, testified that in May 1996, CCDHS provided appellant with $1,400 for a security deposit, one month's rent, and furnishings for an apartment in Amelia, Ohio. However, finding the premises not to her liking, appellant voluntarily vacated the apartment to live with friends in July 1996.
Appellant contends that the only obstacle to reunification with Douglas and Dillon is her lack of stable permanent housing. The record reveals that at the dispositional hearing, appellant put forth evidence that she had secured a mobile trailer as a residence for Douglas and Dillon. However, appellant testified that the trailer belonged to an individual named Gary, whose last name was unknown, or at least, unpronounceable by her. This fact, coupled with appellant's history of lack of stable and permanent housing, provides sufficient evidence to support the trial court's finding that appellant was unwilling to provide an adequate permanent home for Douglas and Dillon.
Finally, the record also contains undisputed evidence that appellant has been incarcerated for an offense committed against both Douglas and Dillon. See R.C. 2151.414(E)(5). Specifically, appellant was found guilty of child endangerment and served time in jail for the offense.
Accordingly, we find, pursuant to R.C. 2151.414(E)(2), (4) and (5), clear and convincing evidence existed to support the magistrate's determination that the children could not be placed with either parent within a reasonable period of time or should not be placed with either parent. The magistrate's recommendation was neither against the manifest weight of the evidence, nor an abuse of discretion. Therefore, the trial court did not err in affirming the magistrate's recommendation.
In the second prong of her attack, appellant contends that the magistrate's determination that an award of permanent custody to CCDHS was in Douglas and Dillon's best interest was against the manifest weight of the evidence and an abuse of discretion. In determining the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors listed in R.C. 2151.414(D). The five factors of former R.C. 2151.414(D) are:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
At the dispositional hearing, Clarence Pauly, Supervisor of Permanency Planning for CCDHS, testified that Douglas and Dillon needed a legally secure placement, primarily because Dillon has emotional problems that are "correlated to an unstable history and familial environment." Pauly opined that an award of permanent custody to CCDHS was in the children's best interest because the probability of the children having to move to another placement is increased if they are maintained in a temporary custody arrangement. Pauly also testified that the probability of Douglas and Dillon being adopted as a sibling group was lower than it would be if they were placed separately; however, he testified that the agency would work to try and place Douglas and Dillon together because they had bonded and such a placement would increase both structure and consistency for Dillon.
The record reveals that the children's guardian ad litem, Jeffry Ferguson, also considered the possibility that the children might not be placed together, and yet still recommended that a grant of permanent custody to CCDHS was in the children's best interest. Specifically, he stated, "I still think that's a higher percentage of success for the kids as weighed against what the parents can give the kids at this point."
The magistrate stated that in determining whether it was in the best interest of the children to grant CCDHS permanent custody, he considered "all relevant evidence, including but not limited to those in the statute." Specifically, he found:
 The children have been in foster care together since October 1995. They have a strong bond to each other. The agency would try to find an adoptive placement for them as siblings. * * * Clarence Pauly, Supervisor of Permanency Planning, placed the probability of them being adopted together at 70-75%. Apart, the probability would be 80-85% within ten months to one year. The children need a legally secure placement.
Having reviewed the record, we find clear and convincing evidence to support the magistrate's determination that it was in the best interest of Douglas and Dillon to grant permanent custody to CCDHS. CCDHS presented sufficient evidence to show that Douglas and Dillon needed a legally secure placement. Given Dillon's emotional problems, CCDHS put forth evidence of a competent and credible nature to show that neither a continuation of temporary custody to CCDHS, nor, given her history of substance abuse and lack of stable housing, a grant of custody to appellant, was in the children's best interest. Therefore, pursuant to R.C.2151.414(D), we find the magistrate's determination that it was in the best interest of the children to grant CCDHS permanent custody was neither against the weight of the evidence, nor an abuse of discretion. Therefore, the trial court did not err in affirming the magistrate's recommendation.
Accordingly, appellant's assignment of error is overruled. Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] We note that the trial court's judgment also permanently divested Arthur Seal, Douglas' father, of his parental rights; however, he has not appealed the judgment.
[2] The complaint alleges in one area that the children are dependent, while in another area, alleges that the children are neglected. Subsequent pleadings indicate that the children were adjudicated to be dependent children.
[3] We recognize that CCDHS argues in its brief that the trial court may rely on one or more of twelve statutory factors, based upon the fact that R.C. 2151.414 was recently amended. Am.Sub.H.B. 419 was passed on February 21, 1996, and became effective on September 18, 1996. Indeed, CCDHS is correct in asserting that one of the consequences of this amendment is that the number of factors upon which a court may determine that a child cannot or should not be placed with either parent increased from eight to twelve. However, because the motion for permanent custody in the instant case was filed on August 27, 1996, prior to the amendment's effective date, this case is controlled by the former version of R.C. 2151.414(E), thus limiting the number of statutory factors to be considered to eight factors. See R.C.1.58; Woodward v. Eberly (1958), 167 Ohio St. 177; and In re Galyon (Sept. 29, 1997), Butler App. No. CA97-01-008, unreported at 4, fn. 1. Therefore, CCDHS' reliance on the amended version of R.C. 2151.414(E) is misplaced.